UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Suzie B. Wilson, individually and as Trustee of the Michael J. Wilson Discretionary (GST Exempt) Trust, The Matthew D. Wilson Discretionary (GST Exempt) Trust, The Mitchell G. Wilson Discretionary (GST Exempt) Trust, and the Nicole S. Wilson Discretionary (GST Exempt) Trust, <br><br>    Plaintiffs, <br>  v. <br><br> Sandra L. Norman, <br><br>    Defendant. | No. 1:23-CV-01660 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Michael Wilson was the trustee and beneficiary of a trust established by his mother, Adia. R. 1, Compl. ¶¶ 1, 9.[1] The Adia Trust required Michael to designate a co-trustee, and he designated John Koren for that role back in 2009. *Id.* ¶ 11. The Trust also established Michael's sister Sandra Norman as trustee in the event of a vacancy in the trusteeship. *Id.* ¶ 21. In March 2018, two weeks after Michael passed away, Norman filed paperwork with the bank holding the Trust, and the bank recognized her as trustee. *Id.* ¶ 24. Around nine months after Michael passed away, his widow, Suzie, discovered that Norman had control of the Trust and access to non-trust accounts that Suzie held at the bank too. *Id.* ¶¶ 30–32, 41. And Suzie noticed

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

that Norman had completed at least one transaction using the Trust, as well as the non-trust accounts. *Id.*

Suzie brought this action alleging that Sandra Norman fraudulently misrepresented herself as a trustee, interfered with Suzie's contractual relationship with the bank, and induced the bank to breach its fiduciary duty to the trust. *Id.* Norman now moves to dismiss the Complaint for lack of subject matter jurisdiction,[2] Fed. R. Civ. P. 12(b)(1); for failure to join Michael's co-trustee as a necessary party, Fed. R. Civ. P. 12(b)(7); and for failure to adequately state the other claims, Fed. R. Civ. P. 12(b)(6). R. 19, Def.'s Mot.[3] For the reasons explained in this Opinion, Norman's motions are denied.

## I. Background

At the motion to dismiss stage, the Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We consider documents attached to the complaint as part of the complaint itself. Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC*

---

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a), as discussed below in part III.A.

[3]Norman also sought a stay pending resolution of the Plaintiffs' claims in arbitration with the bank. The arbitration with the bank has since settled and the Plaintiffs' claims against the bank were dismissed with prejudice by the arbitrator, so the request for a stay is now moot. R. 29, Pls.' Mot. Exh. A. The Plaintiffs' motion to supplement the record with the settlement, R. 29, is granted given that it is relevant to the stay motion.

*v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), as amended (Dec. 16, 2010) (cleaned up).[4]

Michael Wilson passed away in March 2018, and was survived by his wife Suzie, their three children, and his sister Sandra Norman. Compl. ¶¶ 5–6. When he passed away, he was the trustee of, and held the beneficial interest in, a trust initially established by his mother, Adia. *Id.* ¶¶ 9–11. His mother's trust provided that on Michael's death, the trust's assets would be distributed in trust for the benefit of his descendants. R. 19-2, Exh. B., Trust Doc. Art. V § 3(a).

Michael's mother's trust set forth other requirements for trustees. *Id*. Michael was required to designate a co-trustee when he reached a specified age, *id.*, Art. VII § 6, and in 2009 he designated John Koren for that role. Compl. ¶ 11. The Trust separately set forth how vacancies would be filled in the trusteeship of the various trusts that Adia had established: absent a succession plan created by the beneficiary-trustee themselves, first Michael, then his sister Sandra Norman, would serve as a default trustee for each other's trusts. Trust Doc. Art. VII § 8.

On the date that Michael passed away, John Koren remained in office as the co-trustee of the Michael Trust. Compl. ¶ 20. Despite Koren's service as trustee, shortly after Michael died, Sandra Norman filed paperwork with Merrill Lynch asserting herself as trustee of the Michael Trust. *Id.* ¶¶ 20, 24–25. Merrill Lynch then

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

recognized her as trustee instead of Koren. *Id.* ¶ 27; R. 20-1, Exh. A. This position gave her control over the Trust's assets, and apparently also over Michael and Suzie's other accounts at the bank. *Id.* ¶¶ 17, 77(d). Later that month, some of the Trust's assets were sold and proceeds were reaped, and then $189,487.44 was transferred out of the Trust. *Id.* ¶ 32. This transfer allegedly violated the Trust's provision for distribution upon the death of its beneficiary, which required that the assets be distributed only for the benefit of Michael's children. *Id.* ¶ 33; Trust Doc., Art. V § 3.

Suzie became aware of these transactions in 2019. Compl. ¶ 41. She then informed Merrill Lynch that Sandra Norman was not properly a trustee, and that Koren had designated Suzie as trustee of the Michael Trust, as well as of the children's trusts in February of that year. *Id.* ¶¶ 43, 45. Though Norman initially disputed Suzie's efforts to take control of the trusts, she eventually acknowledged, in July 2019, that Suzie was the trustee of the Michael Trust. *Id.* ¶¶ 52, 57.

Suzie brought this action individually and as trustee of Michael and the children's trusts, seeking damages for Sandra Norman's actions while purporting to act as trustee. Compl. Suzie claims that Norman engaged in fraud, tortious interference with contract, and inducement of breach of fiduciary duty. *Id.* Norman now moves to dismiss the complaint for a lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted, as well as for failure to join a necessary party. Def.'s Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires the complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, generally speaking a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Subject Matter Jurisdiction

Sandra Norman first argues that the complaint should be dismissed for lack of subject matter jurisdiction. The diversity jurisdiction statute, 28 U.S.C. § 1332(a), provides that federal courts have jurisdiction over a dispute between citizens of different states, and in which the amount in controversy exceeds $75,000. Diversity of citizenship is undisputed here: Norman is a citizen of Georgia, and Suzie is a citizen of Illinois. But the parties disagree on whether the amount in controversy requirement is sufficiently alleged. Norman argues that Suzie failed to establish adequate damages for diversity jurisdiction because the trust's distributions were used to pay off Suzie's personal line of credit, so the trust ought to recover those funds from Suzie, who happens to be their trustee. Def.'s Mot. at 5; 28 U.S.C. § 1332(a). But a party's ultimate responsibility for a damages claim (that is, the result of the litigation) does not negate whether the amount of that claim is in controversy.

6

In determining the sufficiency of an amount in controversy, a plaintiff's good faith allegations of the amount "control unless the court concludes, to a legal certainty, … the plaintiff cannot recover the jurisdictional minimum …. Put differently, the court has jurisdiction unless an award for the jurisdictional minimum would be legally impossible." *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (cleaned up)).

Suzie alleges damages to the trusts in the amount of $189,487.44. Compl. ¶ 32. That amount was transferred out of the Trust in apparent violation of the Trust's provisions for distribution on death and spendthrift provisions. *Id.* ¶ 33, Trust Doc. Art. XIII. Under Illinois law, trusts can recover damages from non-trustees for amounts improperly disbursed where the non-trustee had assumed the responsibilities of a trustee. *Lawndale Nat. Bank of Chicago v. Kaspar Am. State Bank*, 6 N.E.2d 670, 674 (Ill. App. Ct. 1937).

The amount allegedly transferred out of the Trust is properly construed as damages. Yes, Norman might have counterclaims or might be able to subrogate any damages arising from the improper disbursement of the Trust's assets. But Norman's potential claims do not reduce the alleged amount of misappropriated funds. Sandra's potential counterclaims also fail to produce "a legal certainty" that the Plaintiffs (which are not just Suzie in her individual capacity, but also the Michael Trust and the childrens' trusts), will fail to recover the amount alleged. Because Illinois law allows trusts to recover from non-trustees when a non-trustee improperly disburses funds from a trust, the complaint presents a legal possibility of recovering far more

7

than the jurisdictional minimum from Sandra. Defendant's motion to dismiss for want of diversity jurisdiction is thus denied.

### B. Koren as a Necessary Party under Rule 19

Sandra Norman next argues that Koren, as a co-trustee during the period under dispute, is a necessary and indispensable party to this suit, and because his joinder would defeat diversity jurisdiction, the case should be dismissed for failure to join a necessary party. Def.'s Mot. at 12; Fed. R. Civ. P. 12(b)(7). Norman argues that as a trustee, Koren had responsibility for the Trust's assets, 760 ILCS 3/809, and she alleges—though without explanation—that his absence risks entry of a judgment against *her* for his conduct. According to Norman, Civil Rule 19(a)(1) requires adding Koren to the case because he was a joint tortfeasor. He would thus be a defendant, which would put an Illinois citizen on both sides of the case, undermining diversity jurisdiction.

It is not clear what factual basis there is to think that Norman could be considered a joint tortfeasor with Koren. But even if Koren and Norman could be jointly liable for some kind of tort against the trust, Koren is not a required party here. It is well-established that a plaintiff need not sue all joint tortfeasors. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). So, although a "*defendant* may have a right to contribution" from a joint tortfeasor, "the *victim* is not required to sue more than one of" them.

8

*Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 877 (7th Cir. 2004) (emphases added). There is no requirement here to join Koren.

Even if Koren were required to be joined under Civil Rule 19(a)(1), then there would still be a question over whether the case should move forward. Under Civil Rule 19(b), when joinder is not feasible—including when adding a party would undermine complete diversity—then the "court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). To make that determination, the Court considers (1) the extent a judgment rendered in the party's absence might prejudice the parties; (2) the extent any prejudice could be lessened or avoided; (3) whether an adequate judgment could be rendered in their absence; and (4) if an adequate remedy would otherwise be available. Fed. R. Civ. P. 19(b)(1)–(4). A court may find prejudice where the party claims "an interest relating to the subject of the action and is so situated that the disposition of the action in [their] absence may as a practical matter impair or impede [their] ability to protect that interest." *Salton,* 391 F.3d at 876–77 (cleaned up). If, in equity and good conscience, the action should not proceed among the existing parties, it should be dismissed. *Id.*

Koren's absence from this suit presents no risk of unduly prejudicing the parties. Under Illinois law, trustees are only liable for their own torts. *Jackson v. Jackson*, 98 N.E.2d 169, 181 (Ill. App. Ct. 1951). To the extent that Sandra Norman and Koren could be jointly liable for torts, Norman's interests are not prejudiced by his absence because (to repeat) victims are not required to sue all joint tortfeasors.

9

*Temple*, 498 U.S. at 7; *see also Salton*, 391 F.3d at 877 ("[T]he victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor."). And, to the extent that the complained-of conduct is not attributable to Norman's actions, Norman has a defense to liability that does not require her to attribute liability to a third party. *See Jackson*, 98 N.E.2d at 181. Koren's absence would not prevent her from showing that the allegations did not arise from *her own* conduct.

The complaint does suggest possible claims against Koren, and Sandra may have a claim for contribution or indemnity from Koren. But the possibility of claims or defenses against a person arising from related events does not automatically render them an indispensable party in a suit over those events. In Koren's absence, Sandra can still fully defend herself, and there is no risk she will be held liable for conduct for which she is not properly liable. Because the parties will not be prejudiced by Koren's absence under Civil Rule 19(b)(1), there is no need to provide protective measures to lessen prejudice, Fed. R. Civ. P. 19(b)(2), and an adequate judgment can necessarily be entered in this Court, Fed. R. Civ. P. 19(b)(3) and (4). Because the Court finds no reason to expect Koren's absence would prejudice any of the parties, the Defendant's motion to dismiss for failure to join a necessary party is denied.

### C. Trusteeship

This dispute ultimately turns on whether Sandra Norman properly became a trustee by default at the time of Michael's death, or if instead the terms of the Trust allowed Koren to serve as a sole trustee. Norman argues that all three of Suzie's claims fail because, under the terms of their mother Adia's trust, "Sandra *was* a

10

trustee." Def.'s Mot. at 21 (emphasis in original). Because the issue of whether Norman was actually a trustee runs through each of Suzie's merits claims, that is the first issue to address.

On review of the Declaration of Trust, there is no reason to think that Norman became a trustee when Michael passed away. First, the Adia Trust provides that Adia's children will serve as trustee of their discretionary trust and requires her children to designate a co-trustee. Trust Doc. Art. VII § 6. The Adia Trust also provides for default trustees. Trust Doc. Art. VII § 8. The pertinent section provides that "[i]n the event of a vacancy in the trusteeship," the named individuals (in this case, Sandra and Michael) "shall act as successor Co-Trustees or Trustee." *Id.* The section does not specify whether a "vacancy" is the absence of just one co-trustee, or the absence of all trustees. In Michael's case, he designated Koren as the co-trustee of his trust, and Koren remained in that role when Michael passed away. Compl. ¶¶ 11, 36.

Norman first counters that the default provision of § 8 (which is part of Article VII of the Trust Declaration) made her the trustee upon Michael's death, even though Koren remained as a trustee. Def.'s Mot. at 21. But the first clause of § 8 refers to "trusteeship" only in the singular, reflecting the presumption in the Illinois Trust Code instructing that so long as there still is at least *one* trustee, "a vacancy in a trusteeship need *not* be filled," 760 ILCS 3/704(b) (emphasis added). So it is permissible for there to be only one trustee. Section 8 of the Trust does go on to refer to "Co-Trustees," but that simply means that it is possible—not required—for there to be co-trustees.

11

Nor does the Adia Trust provide, as Norman argues, in Article VII § 6 that there must be multiple co-trustees of Michael's trust. Section 6 provides merely that the beneficiary "and such one or more other persons … as shall be designated by name by said beneficiary … shall become sole Co-Trustees." Trust Doc. Art. VII § 6 (cleaned up). Although the beneficiary of a discretionary trust must name a co-trustee when they *initially* become trustee, the beneficiary remains free to remove their co-trustees at any time, with or without cause. Trust Doc. Art. VII §§ 6, 10. Nor does Section 10 require naming a replacement co-trustee when a co-trustee is removed. Trust Doc. Art. VII § 10. This implies that a beneficiary need not always have a second trustee. Because "vacancy" is not otherwise defined by the Trust Declaration, because a minimum number of trustees (beyond one) is not required, and because Illinois law provides that a vacancy need not be filled if at least one trustee remains in office, the Trust did not create a "vacancy" for purposes of filling the trusteeship through the default sequence described in Article VII § 8 when Michael passed away. Koren remained in office at that time, and no other provision was automatically triggered.

Next, Sandra Norman asserts that Michael's death created a vacancy in the trusteeship, and as a default trustee under Article VII § 8 of the Adia Trust, she properly filled that vacancy pursuant to the Illinois Trust Code, 760 ILCS 3/704(a)(5). Def.'s Mot. at 22. The Illinois Trust Code clarifies that the death of a trustee creates a vacancy in a trusteeship. 760 ILCS 3/704(a)(5). But noticeably missing from Norman's motion is a citation to subsection (b), the next sentence of the trust code which

12

provides (to repeat), "If one or more co-trustees remain in office, a vacancy in a trusteeship need not be filled," 760 ILCS 3/704(b). Subsection (b) limits the operation of subsection (a), which Sandra relies on, to circumstances in which *no* trustee remains to control the trust. Although the Trust Code provides for default rules for a vacancy, it does not contemplate that a trust must have more than one trustee. *See* 760 ILCS 3/703 ("If a vacancy occurs in a co-trusteeship, subsection (b) of Section 704 applies.") But the trusteeship of the Michael Trust was not vacant when Michael died because Koren remained in office as a trustee.[5] So Sandra Norman was not a trustee.

## D. Fraud

Sandra Norman moves to dismiss the fraud claim, arguing that Suzie failed to plead the elements of fraud with particularity. To successfully state a fraud claim, the complaint must allege that the defendant "(i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev.*, 592 F.3d at 766. Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pled with particularity.

---

[5]It speaks volumes that Norman argues *now* that she was properly installed as trustee of the Michael Trust—but back in July 2019, she acknowledged that she was *not* a trustee of the Michael Trust when she signed a letter saying so (the letter was presented to Norman by Suzie's counsel). Compl. ¶¶ 52, 57. Although the text of this acknowledgment is not in the pleadings, it is unclear why Norman insists that she was properly a trustee during despite acknowledging in 2019 that Suzie, not her, was made the sole trustee by operation of Koren's designation.

13

Norman asserts that the forms that she filed with Merrill Lynch, demonstrating her status as trustee, were not a false statement of material fact. On the first element, however, the Court has already held that she was not properly installed as trustee (or at least nothing in the pleadings establish that she was), so the forms were necessarily a false statement. *See* Section III.C. On the second element, Norman signed a letter acknowledging that she was not a trustee, suggesting she knew that the forms she filed with Merrill Lynch were false. The fourth element of fraud—injury to the plaintiff—is also established as discussed in Section III.A, which addressed damages and the amount in controversy.

Only the third element of fraud—whether Suzie adequately pleaded reliance—is truly in dispute. Norman argues that Suzie did not allege any reliance on the allegedly false statements; instead, Norman argues that only *Merrill Lynch* (and not Suzie) relied on these forms. Sandra cites *Village of Bensenville v. City of Chicago* for the proposition that a plaintiff must themselves rely on a misrepresentation to support a fraud claim. 906 N.E.2d 556, 564–65, 592 (Ill. App. Ct. 2009) (holding that property owners failed to plead reliance where they alleged that their neighbors had submitted to eminent-domain proceedings based on misstatements by Chicago, but the plaintiffs were not themselves deceived). But this is too narrow a reading of the facts of *Bensenville*. Common law fraud does not strictly require that the plaintiff directly rely on the defendant's false statement. *Id.* at 590. "[D]eception need not 'always be direct between the defendant and the plaintiff.'" *Id.* (quoting *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213 (Ill. 2004)). Instead, a fraud claim can be

14

supported by a third-party's reliance on the false statement if it is intended to reach the plaintiff and influence them. *St. Joseph Hosp. v. Corbetta Constr. Co.*, 316 N.E.2d 51, 72 (Ill. App. Ct. 1974). Put differently, reliance can be established where a defendant deceives a third party and that deception is passed along to the plaintiff.

That type of reliance is adequately alleged here. Sandra Norman's assertion that she was the trustee was communicated to Suzie though Merrill Lynch—and Suzie then relied on the representation. Indeed, Suzie alleges that Norman's statement (made through Merrill Lynch) caused Suzie and Koren to refrain from asserting control over the Michael Trust for nearly a year after Michael's death. Compl. ¶ 41. Unlike the plaintiffs in *Bensenville* who had not relied on the defendants' false statements, Suzie relied on Sandra's assertion that she was the trustee. This indirect reliance is enough to satisfactorily plead the third element of fraud under Illinois law. The fraud claim remains intact.

### E. Tortious Interference

Sandra Norman next moves to dismiss the claim for tortious interference with contract. To begin, Norman maintains that this claim must meet Civil Rule 9(b)'s heightened pleading standard because it is based on fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (holding that Rule 9(b) applies to any averment of fraud, so its application depends on the facts alleged). Norman contends that Suzie failed to plead specific facts about the allegedly breached contracts and failed to plead that Norman had any intent to induce a breach.

15

Claims for tortious interference with contract generally do not require satisfying a heightened pleading standard. Here, although Suzie's homerun assertion is that Norman engaged in fraudulent conduct by lying to Merrill Lynch (and to Suzie) that Norman was a trustee, the claim for tortious interference does *not* depend on proving an outright fraud. Instead, Suzie can win on tortious interference even if Norman did not knowingly lie when she asserted that she was a trustee. Suzie's claim for tortious interference need only meet the pleading standard of Rule 8(a)(2), and "state a claim to relief that is plausible on its face." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. (In any event, as explained above, Suzie did meet Rule 9(b)'s heightened pleading standard.)

Turning to the merits, under Illinois law, to successfully advance a tortious-interference claim, a plaintiff must adequately allege "(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). The fifth element had been adequately pleaded, as discussed in Section III.A above.

On the other elements, Norman argues that Suzie fails to allege which contracts or contract terms were breached. But the complaint alleges that the Michael Trust and Suzie's other accounts were maintained at Merrill Lynch. Compl. ¶ 72. The complaint also cites the relevant terms of those agreements. *Id.* ¶¶ 73–74. The existence of a valid contract between a bank and a depositor is necessarily implied by that

16

relationship. At the pleading stage, a complaint need not present detailed evidence. *Iqbal*, 556 U.S. at 678. Even if the assertion of Norman's knowledge of that contract, *Id.* ¶ 75, is conclusory, it would be a strange deposit agreement that permitted third-parties to willy-nilly access and transact on an account without the owner's permission or awareness. It is true that Suzie did not submit an exhibit detailing the terms of her and the Trust's relationship with Merrill Lynch, but giving the benefit of reasonable inferences to Suzie (as required at the pleading stage), the Complaint sufficiently pleads the existence of a contract, Sandra's knowledge of it, and a breach of that contract.

Sandra also argues that the Complaint fails to sufficiently allege that her conduct was intentional and unjustified. The third element of tortious interference "requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Webb*, 906 F.3d at 579. The Complaint alleges that Sandra filed paperwork with Merrill Lynch asserting her status as trustee. Compl. ¶¶ 24–26, 76. That paperwork persuaded Merrill Lynch to give her control of the Michael Trust account. *Id.* ¶ 77. Far from being conclusory, the Complaint sufficiently alleges that Sandra actively asserted herself as trustee to Merrill Lynch. *Id.* ¶¶ 24–26, 35. It is hard to see how Sandra intended any purpose for these filings other than inducing Merrill Lynch to recognize her as trustee. Thus, the Complaint also sufficiently pleads the element of intentional and unjustified inducement of the breach. The claim for tortious interference with contract is adequately pleaded.

## F. Breach of Fiduciary Duty

Finally, Sandra Norman moves to dismiss the claim for inducement of breach of fiduciary duty. Norman argues that Suzie pleaded no benefit to Norman and argues (again) that Civil Rule 9(b)'s heightened standard has not been satisfied. But, as discussed in Section III.E, the fiduciary-duty claim—just like the tortious-interference claim—does not depend on an allegation of fraud. In short, this claim can be established even if the fraud claim fails, because the claim does not depend on establishing that Sandra engaged in any intentional and knowing misrepresentations.

To successfully plead inducement of breach of fiduciary duty, a plaintiff must allege "that a third party: (1) colluded with the fiduciary in committing a breach of duty; (2) induced or participated in such breach; and (3) obtained the benefits resulting from the breach of duty." *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 829 N.E.2d 818, 828 (Ill. App. Ct. 2005). Any liability for inducing a breach of fiduciary duty is also predicated on the existence of a fiduciary relationship. *Id.* at 827.

Norman argues that the third element is not sufficiently pleaded because the complaint does not allege that she received any proceeds from the breach of fiduciary duty, and all the proceeds in fact flowed to Suzie personally. The Complaint alleges that Sandra benefited by merely being recognized as trustee, and by the opportunity to assert control over the trust. Compl. ¶ 83.

At this pleading stage, the Complaint sufficiently alleges that Sandra received a benefit. No Illinois court has explicitly held that, in the context of a fiduciary-duty claim, a benefit must be strictly tangible or financial. It is true that most cases involve

financial benefits to the defendant, but no case excludes non-financial benefits from the purview of fiduciary-duty claims. *See, e.g.*, *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997). Here, the Complaint alleges that Norman was recognized as the trustee and controlled the trusts. At the pleading stage, this is enough. After discovery, Suzie will probably need to show more concretely what benefit Norman reaped from the alleged breach of fiduciary duty, but this claim may move forward.

### IV. Conclusion

Sandra Norman's motion to dismiss, R. 19, is denied. Norman shall answer the Complaint by April 16, 2025. The parties shall confer and file a proposed discovery schedule in a joint status report due on April 18, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2025